UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMIE V. HOLMES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-2580 |
| | § | |
| AIR LIQUIDE USA LLC AND AIR LIQUIDE INDUSTRIAL, U.S. LP, COLLECTIVELY DOING BUSINESS AS AIR LIQUIDE AMERICA, | § § § § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendants' Motion to Dismiss, or Alternatively, to Compel Arbitration and Stay Action Pending Arbitration. (Doc. No. 8.) After considering the motion, all responses thereto, and the applicable law, the Court finds that Defendants' motion must be GRANTED.

### I.     BACKGROUND

Plaintiff Jamie V. Holmes ("Holmes" or "Plaintiff") was employed by Defendant Air Liquide America ("Air Liquide") as Manager of Strategic Projects. (Pl. Compl. ¶ 7, Doc. No. 1.) Holmes' employment was terminated in February 2011. (*Id.* ¶ 23.) In July 2011, Holmes filed this lawsuit against Defendants for discrimination in violation of the Americans with Disabilities Act ("ADA"), the Texas Commission on Human Rights Act ("TCHRA"), and Title VII of the Civil Rights Act of 1964 ("Title VII"). Holmes' Complaint alleges that Air Liquide discriminated against her for her association with a

1

person with a disability—in this case, Holmes' daughter—in violation of the ADA and the TCHRA. She alleges that Air Liquide also discriminated against her on thee basis of her gender in violation of Title VII and the TCHRA. Finally, Holmes alleges that Air Liquide retaliated against her for exercising her rights in violation of the TCHRA and the Family & Medical Leave Act ("FMLA").

## II.    LEGAL STANDARD

A two step inquiry governs whether parties should be compelled to arbitrate. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). First, courts must determine whether the parties agreed to arbitrate the dispute. *Id.* The burden of establishing the existence of such an agreement is on the party seeking to compel arbitration. *Henry v. Gonzalez*, 18 S.W.3d 684, 688 (Tex. App.—San Antonio 2000, pet. dism'd by agr.). That party must establish, by a preponderance of the evidence, that such an agreement exists. *Banks v. Mitsubishi Motors Credit of Am., Inc.*, 435 F.3d 538, 540 (5th Cir. 2005).

The determination of whether there exists a valid agreement to arbitrate is decided by reference to state law. *Id.* Once it is determined that such an agreement exists, the burden shifts to the party opposing arbitration to show that the agreement is not enforceable, or that the dispute does not come within the scope of the agreement. In deciding this issue, the court must consider whether any federal statute or policy renders the claims non-arbitrable. *Id.*

The Federal Arbitration Act provides for a stay of proceedings in district courts when an issue in the proceedings is referable to arbitration. 9 U.S.C. § 3. However, where all of a plaintiff's claims are arbitrable, the legal action may be dismissed. *See, e.g.*,

*Fedmet Corp. v. M/V Buyalyk,* 194 F.3d 674, 678 (5th Cir. 1999) (because all of the issues raised before the district court were arbitrable, dismissal of the case was not inappropriate); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (because "all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose.").

**III.   ANALYSIS**

Plaintiff argues that Defendants' motion must be denied under both steps of the two-step inquiry. She asserts that (1) Defendants have failed to establish the existence of an agreement to arbitrate; and (2) even if a predispute arbitration agreement exists between the parties, it was rendered invalid and unenforceable by the 2010 Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank").

**A.   Existence of a Valid Agreement to Arbitrate**

Plaintiff's first assertion is that Defendants have failed to meet their burden of establishing the existence of a valid agreement to arbitrate. In Texas, "[a]rbitration agreements are interpreted under traditional contract principles." *J. M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). "Thus, an employer attempting to enforce an arbitration agreement must show the agreement meets all requisite contract elements." *Id.* at 228. "The following elements are required for the formation of a binding contract: (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Wal-Mart Stores, Inc. v. Lopez*, 93 S.W.3d 548, 555-56 (Tex. App. – Houston [14th Dist.] 2002, no pet.).

Here, Plaintiff disputes that she assented to the contract's terms. In order to meet their burden of establishing that Plaintiff assented, Defendants must submit evidence demonstrating assent. *Effel v. McGarry*, 339 S.W.3d 789, 792-93 (Tex. App.—Dallas 2011, pet. denied) (finding contract unenforceable because plaintiff had no evidence that defendant expressly agreed to any contractual terms). When determining whether mutual assent is present, courts look to the communications between the parties and to the acts and circumstances surrounding these communications. *Angelou v. African Overseas Union*, 33 S.W.3d 269, 278 (Tex. App.—Houston [14th Dist.] 2000, no pet.). In this case, Defendants' evidence of contract formation includes declarations from Judy Bilby, a Senior Analyst with "Tata Consultancy Services;" Art DuBose, Vice President of Human Resources for Air Liquide USA LLC; Bob Moore, the Service Delivery Manager at ACS (a company contracted to provide information technology support to Air Liquide); and Donovan Moore, a former PeopleSoft Developer for Air Liquide Industrial, U.S. LP.

In her declaration, Bilby states that she maintains "the PeopleSoft application where certain Human Resources, Benefits, and Payroll records of Air Liquide . . . are kept and maintained." (Bilby Decl. ¶ 2, Doc. No. 8-A.) Exhibit 1 to Bilby's declaration is a printout that Bilby contends is "a true and correct copy of…acts and events made at the time by, or from information transmitted by, a person with knowledge of the acts and events appearing on this record." (Bilby Decl. ¶ 3.)  Exhibit 1 is a computer printout of a Code of Conduct and Alternative Dispute Resolution ("ADR") policy, with bubbles darkened next to the word "Accept." (Bilby Decl. at 5.) At the end of the document, there is a line that reads: "Date: 3/15/2006, Time: 2:58 PM, Accepted By: Holmes, Jamie V." (*Id.* at 12.) In his declaration, Art DuBose indicates that Holmes expressly agreed to be

4

bound by her electronic signature. (DuBose Decl. ¶ 4, Doc. No. 14-A.) DuBose provides a document titled "Employee's Certification of Electronic Signature," which is signed by Holmes and which indicates that the recipient intends her electronic signature to be the "legally binding equivalent" of her handwritten signature. (Doc. No. 14-A-1.) Defendants assert that these two pieces of evidence—Holmes' electronic signature and her agreement to be bound be her electronic signature—indicate that she signed and is bound by the ADR agreement.

As further support of mutual assent, Defendants provide the following information: On March 1, 2006, all U.S. employees of Air Liquide were informed of the company's new ADR Agreement via email. (DuBose Decl. ¶ 5; B. Moore Decl. ¶ 5, Doc. No. 14-B.) The email was sent from the Corporate Communications department to a distribution list entitled "DL-USALAC." (DuBose Decl. ¶ 5; D. Moore Decl. ¶ 5, Doc. No. 14-C.) DL-USALAC is the email distribution list for all U.S. employees of all Air Liquide companies. (B. Moore. Decl. ¶ 5.) In 2006, when the email was sent, the DS-USALAC list included the email addresses for all current employees of Air Liquide. (B. Moore Decl. ¶ 5.) As an employee of Air Liquide, Plaintiff would have been assigned an individual email address, which would have been included in the distribution list for DL-USALAC when the email was sent in March 2006. (B. Moore Decl. ¶¶ 4, 5.) To access an employee's email account, Air Liquide employees had to log in to their computers and enter a unique login name and password, the latter of which had to be changed every 90 days. (B. Moore Decl. ¶ 4.)

The email sent on March 1, 2006 instructed employees to log on to Air Liquide's online "eHR" system to access the Code of Conduct and the ADR Agreement. (D. Moore

Decl. ¶ 5.) In order to log on to that system, an employee had to use her unique employee ID number and password, meaning that an employee could view only documents and information related to that particular employee. (*Id.*) Once an employee logged into the system and accessed the Code of Conduct/ADR Agreement, she was prompted to press a button to either "Accept" or "Decline." (*Id.* ¶ 6.) Once the employee pressed the appropriate button and clicked "save," the system generated a stamp at the end of the document indicating the employee name, the date, and time that the employee completed her responses. (*Id.* ¶ 7.) Exhibit 1 to Bilby's Declaration reflects that Jamie V. Holmes clicked on the "Accept" button on March 15, 2006 at 2:58 p.m. (Bilby Decl. at 12.) According to Air Liquide, this evidence establishes that Plaintiff, using her unique login and password, accessed, reviewed, and accepted the terms of the ADR Agreement.

Holmes responds that she does not recall Air Liquide having an ADR policy, and does not recall giving her assent to it. (Doc. No. 10 at 7.) In a hearing before the Court on January 12, Plaintiff's counsel indicated that the Court simply cannot know for sure whether Plaintiff's computer-generated acceptance of the ADR agreement represents her signature. While the Court agrees that we cannot know with 100% certainty that Ms. Holmes is responsible for the electronic signature, it is convinced that Defendants have met their burden. As an initial matter, Defendants point out that Texas has adopted the Uniform Electronic Transactions Act (Tex. Bus. & Com. Code §§ 322.001-322.021), which provides, in part, that electronic signatures may be used in contract formation. Tex. Bus. & Com. Code § 322.009(a) ("An electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to

6

determine the person to which the electronic record or electronic signature was attributable."). Moreover, as Defendants have noted, the inability to be 100% certain is not unique to electronic signatures; even if the Court had a physical document with what appeared to be Holmes' signature on it, Holmes could argue that the signature was a forgery. While it is conceivable that someone else could have used Holmes' unique log in information to access her computer, her email, and her eHR site, and then signed the ADR agreement on her behalf, Defendants' evidence proves that such a set of events would be highly unlikely. Notwithstanding Plaintiff's statement that she does not recall signing an ADR agreement, the Court finds that Defendants have met their burden of establishing, by a preponderance of evidence, that a valid agreement to arbitrate exists between the parties.

### B.  Enforceability of the Agreement after Dodd-Frank

Plaintiff argues that, even if Air Liquide has demonstrated an agreement to arbitrate, any such agreement has since been rendered invalid and unenforceable by Dodd-Frank.

#### 1.  Plain meaning of the statute

Plaintiff argues that two sections of Dodd-Frank invalidate any predispute arbitration agreement that she might have had with Defendants. Plaintiff cites 7 U.S.C. § 26(n)(2) (adding new whistleblower protections under the Commodity Exchange Act) ("No predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section."), and 18 U.S.C. § 1514A(e) (enhancing scope of the Sarbanes-Oxley whistleblower provisions) ("No predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration

of a dispute arising under this section."). Plaintiff contends that, if an arbitration agreement requires arbitration of disputes arising under those sections, then the entire agreement is invalid, and no dispute (including disputes *not* arising under the relevant sections and entirely unrelated to Dodd-Frank) is subject to it.

Plaintiff supports her reading of 7 U.S.C. § 26(n)(2) and 18 U.S.C. § 1514A(e) by comparing those Sections of Dodd-Frank to a third Section, 12 U.S.C. § 5567(d)(2), which states that "no predispute arbitration agreement shall be valid or enforceable ***to the extent that*** it requires arbitration of a dispute arising under this section.") (emphasis added). Plaintiff argues that Congress is aware of the difference between "if" and "to the extent that," and that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. U.S.*, 464 U.S. 16, 23 (1983), quoting *U.S. v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972). Thus, Plaintiff concludes that, as 7 U.S.C. § 26(n)(2) and 18 U.S.C. § 1514A(e) use broader language than 12 U.S.C. § 5567(d)(2), their meaning likewise must be broader.

Plaintiff contends that the arbitration agreement at issue in this case, which requires arbitration of any federal statutory claim, necessarily (if unintentionally) requires arbitration of claims arising under 7 U.S.C. § 26 and 18 U.S.C. § 1514A. By requiring arbitration of disputes under those sections, Plaintiff argues that the arbitration agreement violates those sections, and is therefore invalid and unenforceable. Defendants dispute this reading of the statute, and argue that such a reading would invalidate every pre-Dodd-Frank arbitration agreement that does not specifically account for Dodd-Frank.

8

Defendants contend that Plaintiff's reading of the statute is "nonsensical, and such an interpretation cannot be accepted because it is unreasonable and would lead to an absurd result." (Doc. No. 14 at 7.)

The Court emphasizes that this is not a case in which the dispute arises under Dodd-Frank—it is clear that any agreement requiring the arbitration of such a dispute would be invalid. What is far less clear is whether agreements requiring the arbitration of all federal statutory claims are rendered invalid by the passage of Dodd-Frank simply because, without having anticipated the statute, the agreements implicitly require arbitration of claims arising under it. The Court is not aware of any courts to have considered such an argument. However, as the Court ultimately concludes that Plaintiff's argument must fail because the portions of Dodd-Frank upon which she relies do not apply retroactively, it does not issue an opinion on whether Plaintiff's reading of Dodd-Frank is correct.[1]

### 2. Retroactive Application of Dodd-Frank

#### a. Legal Standard

Generally, statutes are presumed to operate prospectively, not retrospectively. *See Martin v. Hadix*, 527 U.S. 343, 357-58 (1999) ("the usual rule [is] that legislation is

---

[1] In addition to statutory interpretation and retroactivity, Defendants raise a third argument against the application of Dodd-Frank in this case. Defendants contend that Dodd-Frank does not apply here because neither Defendant is a publicly traded company. One of the two Sections of Dodd-Frank on which Plaintiff relies, 18 U.S.C. § 1514A, explicitly applies only to publicly traded companies. *See* 18 U.S.C. 1514A (providing "[w]histleblower protection for employees of publicly traded companies"). Because 18 U.S.C. § 1514A invalidates predispute arbitration agreements requiring "arbitration of a dispute *arising under this section*," and because disputes against a non-publicly traded company cannot arise under the Section, Defendants urge that 18 U.S.C. § 1514(A) is entirely irrelevant in this case. While Defendants may be correct on that point, the Court notes that the resolution of their argument would only affect half of Plaintiff's argument. Because 7 U.S.C. § 26—the other Section of Dodd-Frank upon which Plaintiff relies—does not explicitly apply only to publicly traded companies, the Court would have to consider Defendants' other arguments in any event. Thus, in the interest of judicial economy, the Court begins by considering an argument that is applicable to both Sections upon which Plaintiff relies.

9

deemed to be prospective."). In *Landgraf v. USI Film Prods.*, 511 U.S. 244. (1994), the Supreme Court provided the framework by which courts are to determine the retroactivity of federal statutes. Noting the "particular concerns" raised by retroactive statutes, *id.* at 266, the Supreme Court instructs that courts must consider "whether the new provision attaches new legal consequences to events completed before its enactment." *Id.* at 269-270. If it does, a presumption against statutory retroactivity exists. *Id.* at 270-73. The presumption against retroactivity can be rebutted by "specific legislative authorization;" that is, where a statute unambiguously applies to preenactment conduct, "there is no conflict between that principle and a *presumption* against retroactivity," and the statute is to be applied as it indicates. *Id.* at 273.

The presumption of retroactivity can be rebutted in other situations, as well. For example, "[w]hen the intervening statute authorizes or affects the propriety of prospective relief," the new provision is not retroactive, and the statute may be applied. *Id.* Statutes conferring or ousting jurisdiction or changing procedural rules similarly may, in some cases, be applied retroactively. *Id.* at 274-75. However, where a new statute would have a "genuinely 'retroactive' effect," that is, where its application would "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed," it may not be applied retroactively. *Id.* at 277, 280. Thus, the Court must determine whether Congress manifested clear intent for Dodd-Frank to apply retroactively; if it did not, the Court must consider whether the provisions at issue would have a genuinely retroactive effect if applied to past conduct.

b.  **Case Law**

As Dodd-Frank became effective quite recently, only a handful of courts have looked at the statute in the context of retroactivity. Some have considered whether portions of Dodd-Frank not at issue in this case apply retroactively. *See, e.g.*, *Riddle v. Dyncorp Int'l Inc.*, --- F.3d ---, 2012 WL 19794 at *4 (5th Cir. Jan. 5, 2012) (concluding that Dodd-Frank's statute of limitations can be applied to a pending case, unless the effect would be to revive a claim that expired before the statute's effective date); *Saunders v. District of Columbia*, 789 F. Supp. 2d 48, 52 n. 3 (D.C.C. 2011) (considering the retroactive application of Dodd-Frank's statute of limitations, but declining to reach a decision on the merits); *Lindsay v. Technical Coll. Sys. of Georgia*, 2011 WL 1157456, at *6 (N.D. Ga. Mar. 29, 2011) (considering the retroactive application of Dodd-Frank's statute of limitations, but declining to reach a decision on the merits); *Citgo Petroleum Corp. v. Bulk Petroleum Corp.*, 2010 WL 3212751, at *8 n.4 (N.D. Okla. Aug. 12, 2010) (holding that Dodd-Frank's extension of the limitations period of the Equal Credit Opportunity Act should not be applied retroactively because there is no clear indication in the Act that is to be applied retroactively).

Only two courts have evaluated the retroactive application of portions of Dodd-Frank restricting mandatory predispute arbitration. *See Henderson v. Masco Framing Corp.*, 2011 WL 3022535 (D. Nev. July 22, 2011); *Pezza v. Investors Capital Corp.*, 767 F. Supp. 2d 225 (D. Mass. 2011). These courts reached opposite conclusions: *Henderson* held that 18 U.S.C. § 1514A(e)(e) could not apply retroactively under the principles set forth in *Langraf*. 2011 WL 3022535, at *11-13. The court determined that the arbitration agreement at issue was a contract, and that predictability was therefore of paramount importance. *Id.* at *12. It concluded that retroactive application of the provisions at issue

would "impair rights [the parties] possessed when [they] acted." *Id.* at *13 (quoting *Landgraf*, 511 U.S. at 280). *Pezza*, in contrast, concluded that retroactive application of a provision regarding arbitration would affect only the conferral of jurisdiction; under *Landgraf*, the court concluded, the effect of the provision was therefore not genuinely retroactive. 767 F. Supp. 2d at 232-34.

### c. Analysis

The Court begins its analysis by agreeing with both the *Pezza* and *Henderson* courts that the portions of Dodd-Frank addressing predispute arbitration do not evidence any intent to apply retroactively.[2] Thus, the Court proceeds to considering whether the presumption against retroactivity is rebutted in this case. Ultimately, the Court cannot agree with the holding in *Pezza* that the portions of Dodd-Frank at issue affect only procedural rights. Instead, as the court held in *Henderson*, this Court finds that the rights of contracting parties are substantive, and that a statute affecting those rights undoubtedly impairs rights that existed at the time the parties acted. As the court in *Henderson* explained, retroactive application in this case "would not merely affect the jurisdictional location in which [the parties'] claims could be brought; it would fundamentally interfere with the parties' contractual rights and would impair the 'predictability and stability' of their earlier agreement." 2011 WL 3022535, at *13 (quoting *Landgraf*, 511 U.S. at 271). Indeed, Landgraf explicitly mentioned "contractual or property rights" as "[t]he largest category of cases in which . . . the presumption against retroactivity has been applied," as these are areas "in which predictability and stability are of prime importance." 511 U.S.

---

[2] *Pezza* reached this conclusion explicitly, 767 F. Supp. 2d at 232. The court in *Henderson* did not write on this matter; however, as it ultimately concluded that Dodd-Frank does not apply retroactively, it must have considered the expressed intent of the statute and concluded that there exists no unambiguous intent to apply retroactively.

at 271. Because Dodd-Frank would have a "genuinely 'retroactive' effect," 511 U.S. at 277, the Court concludes that neither 7 U.S.C. § 26(n)(2) nor 18 U.S.C. § 1514A(e) affects the enforceability of the arbitration agreement between Plaintiff and Defendants.

### C. Stay or Dismissal

Plaintiff argues that, even if the Court compels arbitration, the case must be stayed, not dismissed. However, the Fifth Circuit has noted that where "all issues raised in [an] action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action [serves] no purpose." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (affirming district court's dismissal with prejudice where all of plaintiff's claims were subject to arbitration). Because all of Plaintiff's claims in this case are subject to arbitration, the Court concludes that the case should be dismissed.

### IV. CONCLUSION

Because a valid arbitration agreement exists and is enforceable, Defendants' motion to compel arbitration must be **GRANTED**. The case is therefore **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 30th day of January, 2012.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE